**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leonardo Lopez,<br><br>        Plaintiff,<br><br>v.<br><br>YourPeople Incorporated,<br><br>        Defendant. | No. CV-16-03982-PHX-JZB<br><br>**ORDER** |

Pending before the Court is Defendant's Motion to Dismiss and Compel Arbitration of Individual Claims. (Doc. 11.) For the reasons below, the Court will grant Defendant's Motion to Compel and order Plaintiff Leonardo Lopez and Defendant to proceed to arbitration as provided in the parties' Arbitration Agreement. The Court will deny without prejudice Defendant's request to dismiss the Complaint and order the parties to provide briefing regarding whether the Court should stay or dismiss this action while Plaintiff and Defendant proceed to arbitration, and the impact of the opt-in

Plaintiffs on this case moving forward.[1]

## I. Background

Plaintiff began working for Defendant as an Account Executive in Defendant's Arizona Office on January 5, 2015. (Doc. 1 ¶¶ 15, 28; Doc. 11-1 ¶¶ 8-9.) On February 26, 2016, Defendant informed Plaintiff it would be terminating his employment, effective February 29, 2016. (Doc. 11-1 ¶ 11.) Defendant provided Plaintiff with a Severance Agreement for his consideration on February 26, 2016. (*Id.* ¶ 12.) Plaintiff signed the Agreement on March 4, 2016, and thereafter accepted the consideration detailed in the Agreement. (*Id.* ¶ 14.)

The Agreement provides that Defendant would pay Plaintiff a lump sum severance payment, reimbursement for COBRA premiums for six months, and a separate payment made in lieu of any claim to unpaid accrued vacation. (Doc. 11-1 at 5.) The Agreement further states that Plaintiff "acknowledge[s] that [Defendant] has paid all wages, bonuses, earned commissions, and accrued vacation or PTO (as applicable) and any and all other compensation and benefits owed to you as of your Termination Date . . ." (*Id.*) In consideration for the payment, Plaintiff agreed to a Release of Claims, which stated Plaintiff "agree[s] not to sue or otherwise institute or cause to be instituted any legal or administrative proceedings concerning, any claim, duty, obligation or cause of action relating to any matters of any kind . . . including, without limitation: . . . any and all claims for violation of . . . the Fair Labor Standards Act." (*Id.* at 6-7.) The Agreement

---

[1] The named parties have consented to Magistrate Judge jurisdiction. (Docs. 6, 21, 22.) Therefore, this Court has jurisdiction over this matter. *See Williams v. General Electric Capital Auto Lease, Inc.*, 159 F.3d 266, 269 (7th Cir.1998) ("[T]he named representative—in this case Stacey Williams—is the 'party' to the lawsuit who acts on behalf of the entire class, including with regard to the decision to proceed before a magistrate judge. This is an inherent part of representational litigation."), *cert. denied*, *Harper v. General Electric Capital Auto Lease, Inc.*, 527 U.S. 1035 (1999); *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012) ("We agree with the Seventh Circuit that unnamed class members are not 'parties' within the meaning of § 636(c)(1), and that their consent is not required for a magistrate judge to exercise jurisdiction over a case."); *Day v. Persels & Associates*, LLC, 729 F.3d 1309, 1316–17 (11th Cir. 2013).

also contains the following provisions:

18. **<u>Governing Law and Disputes.</u>** Any dispute or claims arising from or related to this Agreement, your employment relationship with [Defendant], or the termination of that relationship (including but not limited to statutory, contractual, constitutional, or common law claims), shall be resolved, to the fullest extent permitted by law, by final, binding and confidential arbitration in San Francisco, California conducted before a single neutral arbitrator by JAMS, Inc. ("JAMS") or its successor, under the then-applicable JAMS Arbitration Rules and Procedures for Employment Disputes (available at http://www.jamsadr.com/rules-employment-arbitration/), on an individual basis only, and not on a class, collective, or private attorney general representative basis on behalf of others. **You and [Defendant] acknowledge that by agreeing to this arbitration procedure, you and [Defendant] waive the right to resolve any such dispute, claim or demand through a trial by jury or judge or by administrative proceeding.** You will have the right to be represented by legal counsel at any arbitration proceeding, at your expense. The arbitrator shall: (a) have the authority to compel adequate discovery for the resolution of the dispute and to award such relief as would otherwise be available under applicable law in a court proceeding; (b) issue a written statement signed by the arbitrator regarding the disposition of each claim and the relief, if any, awarded as to each claim, the reasons for the award, and the arbitrator's essential findings and conclusions on which the award is based; and (c) have the authority to award recovery of reasonable attorneys' fees and costs to the party deemed to be the prevailing party in any such arbitration. [Defendant] shall pay all JAMS' arbitration fees. Nothing in this Agreement is intended to prevent either you or the Firm from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any arbitration.  This Agreement shall be construed and interpreted in accordance with the laws of the State of California and the Federal Arbitration Act ("FAA"). In the case of a conflict, the FAA will control.

19. **<u>Severability.</u>** In the event that any provisions hereof, or any portion thereof, becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Agreement shall continue in full force and effect without said provision or said portion of said provision.

. . . .

21. **<u>Voluntary Execution of Agreement; Acknowledgments.</u>** This Agreement is executed voluntarily and without any duress or undue influence on the part or behalf of the Parties hereto, with the full intent of releasing all of your claims. You acknowledge that:

(a) You have read this Agreement;

   (b) You understand the terms and consequences of this Agreement and of the release it contains;

   (c) You are fully aware of the legal and binding effect of this Agreement;

   (d) You have been advised to consult with any attorney prior to executing the Agreement.

(*Id.* at 8-9.)

On November 17, 2016, Plaintiff filed a "Collective Action Complaint" pursuant to the Fair Labor Standards Act (FLSA), individually and on the behalf of other similarly situated employees, alleging Defendant failed to pay overtime wages. (Doc. 1 ¶¶ 3-6.)

On February 6, 2017, Defendant filed a Motion to Dismiss and Compel Arbitration of Individual Claims. (Doc. 11.) Defendant asserts that the parties entered a valid and enforceable Arbitration Agreement, which requires Plaintiff to bring his claims individually in arbitration, and that any claims regarding arbitrability must be submitted to the arbitrator in the first instance. In response, Plaintiff does not dispute that the Agreement contains a mutual Arbitration Agreement, Plaintiff signed the written Agreement, and Defendant paid Plaintiff the payments provided for by the Agreement. (Doc. 25.) Rather, Plaintiff asserts that the entire Severance Agreement, including the Arbitration Agreement, is void because private settlements of FLSA claims are unenforceable without court or Department of Labor (DOL) approval, and, therefore, the Severance Agreement fails for lack of consideration, the Arbitration Agreement is unconscionable, a collective action affords potential claimants the best opportunity to exercise their rights under the FLSA, and Defendant has waived enforcement of the Arbitration Agreement by attempting to settle with Plaintiff and other similarly situated former employees outside of arbitration. (Doc. 25.)

**II. Discussion**

  **a. Delegation of Arbitrability to the Arbitrator**

Defendant first argues that, under both federal and California law, the parties agreed to delegate issues regarding arbitrability, including sufficiency of the

- 4 -

consideration and unconscionability, to the arbitrator for a decision. (Doc. 11 at 7-8.)

> Generally, in deciding whether to compel arbitration, a court must determine two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002). However, these gateway issues can be expressly delegated to the arbitrator where "the parties *clearly and unmistakably* provide otherwise." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) (emphasis added); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so").

*Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

"[F]ederal law governs the arbitrability question by default because the Agreement is covered by the FAA, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, *Inc.*, 473 U.S. 614, 626 (1985), and the parties have not clearly and unmistakably designated that nonfederal *arbitrability* law applies, *see Cape Flattery Ltd. v. Titan Maritime*, 647 F.3d 914, 921 (9th Cir. 2011)." *Brennan*, 796 F.3d at 1129. More specifically, the parties' choice-of-law provision provides that construction and interpretation of the Agreement will be in accordance with California law and the FAA, but, in the event of a conflict, the "FAA will control."[2] (Doc. 11-1 at 9.)

In *Brennan*, the Ninth Circuit Court affirmed the district court's finding that the "parties' incorporation of the AAA rules constituted 'clear and unmistakable' evidence of their intent to submit the arbitrability dispute to arbitration." *Id.* at 1131; *see also Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074-75 (9th Cir. 2013) (holding that the parties' incorporation of the UNCITRAL Rules, which include an "almost identical" jurisdictional provision as the AAA Rules, constituted "clear and unmistakable

---

[2] Plaintiff does not make any argument regarding what law applies to the issues raised by Defendant. In his Response, Plaintiff applies California law in his analysis of unconscionability. Otherwise, Plaintiff cites to federal law.

- 5 -

evidence that the parties agreed the arbitrator would decide arbitrability").[3]  If the Court finds that the parties clearly and unmistakably agreed to delegate "arbitrability questions to the arbitrator," the Court must then examine whether the delegation clause is itself unconscionable. *Brennan*, 796 F.3d at 1132.   Some courts have inquired into whether the assertion of arbitrability is "wholly groundless." *Khraibut v. Chahal*, No. C15-04463-CRB, 2016 WL 1070662, *4 (N.D. Cal. March 18, 2016) (citing *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006)).

Here, Defendant argues that by agreeing to incorporate the JAMS Rules, the parties "clearly and unmistakably" agreed that the arbitrator must decide issues regarding arbitrability.  (Doc. 11 at 7-8.)   Like AAA Arbitration Rules, JAMS Employment Arbitration Rules provide that "disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator." Plaintiff does not respond to Defendant's argument that the parties clearly and unmistakably agreed to delegate arbitrability to the arbitrator by agreeing to arbitrate in accordance with JAMS Arbitration Rules.  Therefore, based on applicable law, the Court finds that the parties' clearly and unmistakably agreed to delegate arbitrability to the arbitrator.  The Court addresses Plaintiff's arguments regarding unconscionability below.

### i. Unconscionability of the Delegation Clause

Plaintiff argues that the Severance Agreement as a whole is unconscionable because it includes a waiver of FLSA claims, and the arbitration provision is unconscionable under California law because Plaintiff was "facing unemployment and uncertainty," "Defendant[ was] in a greater position of leverage to delegate the terms of the Agreement," and the Agreement requires that the arbitration take place in San Francisco, California.  (Doc. 25 at 4-5.)  However, the Court must confine its analysis to

---

[3] Although the Court in *Brennan* noted that it was not addressing the effect "of incorporating [AAA] arbitration rules into consumer contracts' or into contracts of any nature between 'unsophisticated' parties," Plaintiff does not make any argument that he is an unsophisticated party. *Brennan*, 796 F.3d at 1131 (quoting *Oracle America*, 724 F.3d at 1075 & n.2).

- 6 -

the specific challenged Agreement in question. Therefore, Plaintiff's argument regarding enforceability and unconscionability of the Severance Agreement as a whole is outside the scope of this Court's review and should be decided by the arbitrator. *See Sena v. Uber Technologies Inc.*, No. CV-15-2418, 2016 WL 1376445, at *4 (D. Ariz. April 7, 2016) ("When assessing whether a delegation clause is unconscionable, a court must sever it from the arbitration provision in which it is embedded. 'It is not sufficient to prove that the arbitration provision as a whole, or other parts of the contract, are unenforceable.'") (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 71-74 (2010)); *Khraibut*, 2016 WL 1070662, at *3 ("where a court finds that the parties have empowered an arbitrator to decide arbitrability, the court's role is narrowed from deciding whether there is an applicable arbitration agreement to only deciding whether there is a valid delegation clause. *Id.* at 2779. In that circumstance, the traditional questions of contract formation, validity, revocation, and unconscionability should fall to the arbitrator.").

Even construing Plaintiff's other arguments regarding unconscionability of the Arbitration Agreement as a challenge to the delegation clause, for the reasons below, the Court finds that Plaintiff's arguments lack merit.

> Under California law, "the party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236, 145 Cal.Rptr.3d 514, 282 P.3d 1217 (2012). In order to establish such a defense, the party opposing arbitration must demonstrate that the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable. *Sanchez*, 61 Cal. 4th at 910, 190 Cal. Rptr. 3d 812, 353 P.3d 741. Procedural and substantive unconscionability "need not be present in the same degree." *Id.* Rather, there is a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114, 99 Cal. Rptr. 2d 745, 6 P.3d 669 (2000)). We therefore must consider both procedural and substantive unconscionability.
>
> The procedural element of unconscionability focuses on "oppression or surprise due to unequal bargaining

> power." *Pinnacle*, 55 Cal. 4th at 246, 145 Cal.Rptr.3d 514, 282 P.3d 1217. "The oppression that creates procedural unconscionability arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1347-48, 182 Cal. Rptr. 3d 235, *as modified on denial of reh'g* (Feb. 9, 2015). California courts have held that oppression may be established by showing the contract was one of adhesion or by showing from the "totality of the circumstances surrounding the negotiation and formation of the contract" that it was oppressive. *Id.* at 1348.
>
> . . . .
>
> While California courts have found that "the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability" in a range of circumstances, *Sanchez*, 61 Cal. 4th at 915, 190 Cal.Rptr.3d 812, 353 P.3d 741, the California Supreme Court has not adopted a rule that an adhesion contract is per se unconscionable, *see id.* at 914-15, 190 Cal.Rptr.3d 812, 353 P.3d 741; *see also Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1320, 27 Cal. Rptr. 3d 797 (2005) ("Although adhesion contracts often are procedurally oppressive, this is not always the case."). In the employment context, if an employee must sign a non-negotiable employment agreement as a condition of employment but "there is no other indication of oppression or surprise," then "the agreement will be enforceable unless the degree of substantive unconscionability is high." *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 704, 155 Cal. Rptr. 3d 506, *as modified* (Apr. 19, 2013), *as modified* (Apr. 26, 2013) (internal quotation marks omitted); *see also Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 796, 137 Cal. Rptr. 3d 773 (2012).
>
> California courts have articulated numerous standards for determining substantive unconscionability. Courts have held that the agreement must be "overly harsh," "unduly oppressive," "unreasonably favorable," or must "shock the conscience." *Sanchez*, 61 Cal. 4th at 911, 190 Cal.Rptr.3d 812, 353 P.3d 741 (emphasis omitted). "[T]hese formulations, used throughout [California] case law, all mean the same thing." *Id.* The "central idea" is that "the unconscionability doctrine is concerned not with a simple old-fashioned bad bargain but with terms that are unreasonably favorable to the more powerful party." *Baltazar*, 62 Cal. 4th at 1244, 200 Cal.Rptr.3d 7, 367 P.3d 6 (internal quotation marks and citations omitted). "Not all one-sided contract provisions are unconscionable." *Sanchez*, 61 Cal. 4th at 911, 190 Cal.Rptr.3d 812, 353 P.3d 741.

*Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260-61 (9th Cir. 2017) (analyzing

unconscionability of an arbitration agreement under California law).  As detailed below, the Court does not find the Arbitration Agreement, including the delegation clause, to be procedurally or substantively unconscionable.

### 1. Procedural Unconscionability

Plaintiff argues that because Plaintiff was facing "unemployment and uncertainty," "Defendant[ was] in a greater position of leverage to dictate the terms of the Agreement," and "Plaintiffs were not in a position to negotiate that any dispute arising from their employment should be arbitrated in Arizona," the Arbitration Agreement is unenforceable.  (Doc. 25 at 4-5.)  However, Plaintiff's general claim that he could not negotiate the terms of the Arbitration Agreement, even if true, "would give rise to a low degree of procedural unconscionability at most."  *Poublon*, 846 F.3d at 1261-62 (noting that under California law, adhesion contracts, without more, give rise to a low degree of procedural unconscionability, at most) (citing to *Baltazar v. Forever* 21*, Inc.*, 62 Cal. 4th 1237, 1245 (2016)).  And, Plaintiff fails to provide any support for his claim that he could not negotiate the terms of the Arbitration Agreement.  Further, executing the Agreement was not a condition of Plaintiff's employment with Defendant (Plaintiff was presented with the Agreement after being informed that Defendant was terminating his employment), the Severance Agreement includes a separate provision wherein Plaintiff acknowledged that he reviewed the Agreement and was advised to consult with his own attorney prior to executing the Agreement, and Defendant gave Plaintiff 14 days to consider the Agreement before signing.  (Doc. 11-1 at 1-3, 9.)  Further, the Arbitration Agreement, which contains the delegation clause, was not hidden within the Severance Agreement.  Based on these facts, the Court finds that the Arbitration Agreement, including the delegation clause, is not procedurally unconscionable.

### 2. Substantive Unconscionability

Plaintiff further argues that the Agreement is substantively unconscionable because it requires that the arbitration take place in San Francisco, California and, therefore, would require Plaintiff "to travel, at [his] own expense, to San Francisco,

- 9 -

California if [he] ha[s] a dispute which arose from [his] employment with Defendant." (Doc. 39 at 5.) The California Supreme Court has held "that forum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable." *Smith, Valentino & Smith, Inc. v. Superior Court*, 551 P.2d 1206, 1209 (Cal. 1976). "California appellate courts considering forum selection clauses in adhesion contracts have held that '[n]either inconvenience nor additional expense in litigating in the selected forum is part of the test of unreasonability.'" *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1028 (9th Cir. 2016) (quoting *Cal-State Business Products & Services, Inc. v. Ricoh*, 12 Cal. App. 4th 1666, 1679 (1993)) (citing *Am. Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 19 (2001) ("[T]he additional cost or inconvenience necessitated by litigation in the selected forum is not part of the calculus when considering whether a forum selection clause should be enforced.")). *See also Poublon*, 846 F.3d at 1264-65 (finding that under California law, the forum selection clause, requiring that the arbitration take place in Minnesota, a thousand miles from the plaintiff's home, was not substantively unconscionable because Minnesota was not "unavailable or unable to accomplish substantial justice."). Here, Plaintiff makes no allegation that San Francisco, California as a venue is unreasonable other than arguing that Plaintiff will need to travel there from Arizona. Therefore, the Court does not find that the venue provision in the Arbitration Agreement is substantively unconscionable.

### ii. The Motion to Compel is not "wholly groundless."

As Defendant notes, and as noted above, some courts have also conducted a "second, more limited inquiry to determine whether the assertion of arbitrability is 'wholly groundless.'" *Qualcomm Inc.*, 466 F.3d at 1371 (citing *See Dream Theater, Inc. v. Dream Theater*, 124 Cal.App.4th 547 (2004)). However, even applying this standard, Plaintiff fails to provide any basis for finding that the Motion is groundless. Further, the Arbitration Agreement covers "[a]ny dispute or claims arising from or related to this Agreement, [Plaintiff's] employment relationship with [Defendant], or the termination of

that relationship (including but not limited to statutory, contractual, constitutional, or common law claims)," and requires Plaintiff to pursue his claims on an individual basis. (Doc. 11-1 at 8.) Here, Plaintiff alleges claims against Defendant for failure to pay him overtime during his employment in violation of the FLSA. Therefore, Plaintiff's claims are sufficiently connected to the Arbitration Agreement and Defendant's Motion to Compel is not "wholly groundless."[4]

For the reasons detailed above, under applicable law, the parties clearly and unmistakably agreed to delegate the gateway issue of arbitrability to the arbitrator. Plaintiff fails to provide any basis for finding that the agreement to delegate arbitrability is unenforceable. Therefore, the Court finds the delegation clause is enforceable.

### b.  Plaintiff's Arguments Regarding Collective Actions

Plaintiff also argues that "a collective action under the FLSA affords the best opportunity for potential claimants to exercise their rights under the FLSA," and that the Supreme Court in *Hoffman-La Roche v. Sperling*, 493 U.S. 165 (1989), "held that in order to obtain the benefits of a collective action sought by Congress, a district court has 'a managerial responsibility' to oversee the FLSA opt-in process 'to assure that the task is accomplished in an efficient and proper way.'" (Doc. 25 at 5-6.)

Plaintiff's argument regarding the benefits of proceeding as a collective action is not a sufficient basis for the Court to deny Defendant's Motion to Compel. First, the Court in *Hoffman-La Roche* did not address enforcement of arbitration provisions. Rather, it addressed "the narrow question whether, in an ADEA action, district courts may play any role in prescribing the terms and conditions of communication from the

---

[4] Plaintiff also appears to argue that Defendant waived enforcement of the Arbitration Agreement by seeking to settle with Plaintiff "and others similarly situated." (Doc. 25 at 6-7.) However, Plaintiff does not cite any authority to support this argument. Further, the only evidence Plaintiff provides regarding Defendant's conduct are a series of unsigned settlement agreements unrelated to Plaintiff. Therefore, even considering Plaintiff's argument, he has failed meet his heavy burden of establishing waiver. *United States v. Park Place Associates, Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009) ("However, we have emphasized that 'waiver of the right to arbitration is disfavored because it is a contractual right, and thus 'any party arguing waiver of arbitration bears a heavy burden of proof.'") (internal quotations and citations omitted)); *See Lewis v. Fletcher Jones Motor Cars, Inc.*, 205 Cal. App. 4th 436, 444 (2012), *as modified* (Apr. 25, 2012) (same).

named plaintiffs to the potential members of the class on whose behalf the collective action has been brought." *Hoffman-La Roche*, 493 U.S. at 169.  Second, Plaintiff fails to cite to any legal authority that FLSA claims cannot be referred to arbitration on an individual basis. Therefore, Plaintiff's argument with regard to the benefits of collective actions is irrelevant to the issues currently before the Court.[5]

### III.   Plaintiff's Request to Amend

Finally, Plaintiff requests that if the Court compels arbitration as to Plaintiff, the Court grant Plaintiff's counsel leave to amend the Complaint "to substitute Plaintiff representatives who did not sign the Agreement." (Doc. 25 at 7.)  The Court will deny Plaintiff's request at this time.  Plaintiff does not identify any authority to support his request.   And, although Plaintiff's counsel has filed a Notice of Filing Consent to Be a Party Plaintiff and Opt-in to Lawsuit on behalf of several individuals (Docs. 5, 10), and attached unsigned settlement agreements to his Response to Defendant's Motion to Dismiss and Compel Arbitration, Plaintiff does not attach a proposed amended pleading as required by Rule 15.1 of the Local Rules of Civil Procedure, or even identify who would be named in an amended Complaint, or whether any of the opt-ins signed an arbitration agreement.  (*See* Doc. 25 at 7 ("Other opt-in plaintiffs *may* not have signed this Agreement . . .) (emphasis added)).

Plaintiff further fails to address whether Plaintiff, or the opt-in Plaintiffs, would have standing to proceed in this action if Plaintiff's claims are sent to arbitration.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (holding that standing requires that "the injury will be redressed by a favorable decision" (quotation omitted));

---

[5] In its Motion to Compel, Defendant acknowledges that the Ninth Circuit Court in *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 980 (9th Cir. 2016), *cert. granted*, 137 S.Ct. 809, (U.S. Jan. 13, 2017) (No. 16–300), held that class action waivers, when a condition of employment, are unenforceable because they violate the section 7 of the National Labor Relations Act. (Doc. 11 at 16-17.) However, Defendant argues that the holding in *Morris* is inapplicable to this case because Plaintiff signed the Agreement at issue after his employment ended, and, therefore, execution of the Arbitration Agreement was not a condition of Plaintiff's employment.  Plaintiff, apparently agreeing with Defendant's analysis, does not address the issue in his Response. (Doc. 25.) Because Plaintiff does not argue the collective and class action waiver in the parties' Arbitration Agreement is unenforceable under *Morris*, the Court will not address that issue.

- 12 -

*Douglas v. U.S. Dist. Court for Cent. Dist. Of Calif.,* 495 F.3d 1062, 1069 (9th Cir. 2007) ("If Douglas's individual claim is rendered moot because it is fully satisfied as a result of the arbitration, he would lose his status as class representative because he would no longer have a concrete stake in the controversy."); *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("In the absence of any claimant[]s opting in, respondent's suit became moot when her individual claim became moot, because she lacked any personal interest in representing others in this action . . . the mere presence of collective action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied."); *Smith v. T-Mobile USA Inc.*, 570 F.3d 1119, 1123 (9th Cir. 2009) ("structural distinctions between a FLSA collective action and a Rule 23 class action foreclose appellants' claims of a continuing personal stake. Accordingly, we join our sister circuits in holding that a FLSA plaintiff who voluntarily settles his individual claims prior to being joined by opt-in plaintiffs and after the district court's certification denial does not retain a personal stake in the appeal so as to preserve our jurisdiction."). Therefore, the Court will deny Plaintiff's request for leave to amend.

**IV.  Conclusion**

The Court must compel Plaintiff to submit to arbitration because the parties entered into a valid and enforceable agreement to arbitrate questions of arbitrability. Defendant requests the Court dismiss the Complaint in its entirety. "Pursuant to [§ 3 of the FAA], the Court is required to stay proceedings pending arbitration if the Court determines that the issues involved are referable to arbitration under a written arbitration agreement." *Meritage Homes Corp. v. Hancock*, 522 F. Supp. 2d 1203, 1211 (D. Ariz. 2007). However, the Court may also, in its discretion, dismiss the case. *See id.*

Here, the Court will deny Defendant's request to dismiss the Complaint without prejudice. As detailed above, the Court will require Plaintiff to submit to arbitration. However, neither party addresses in any meaningful manner the status of the opt-in Plaintiffs, or their impact on whether, and to what extent, the Court may dismiss this matter. Therefore, the Court will require the parties, within 21 days, to file briefing

- 13 -

regarding: (1) whether the Court should stay or dismiss this matter while Plaintiff and Defendant proceed to arbitration; and (2) how the Court should handle the collective action allegations in the Complaint and the opt-in Plaintiffs moving forward. Each party's briefing must contain a thorough analysis of relevant legal authority.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss and Compel Arbitration of Plaintiff's individual claims (Doc. 11) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Defendant's Motion to Compel arbitration of Plaintiff's individual claims is granted.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss is denied without prejudice.

**IT IS FURTHER ORDERED** that on or before **August 10, 2017**, Plaintiff and Defendant shall each file briefing that addresses the issues listed above.

Dated this 20th day of July, 2017.

Honorable John Z. Boyle
United States Magistrate Judge